IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 10, 2010 Session

## STATE OF TENNESSEE ex rel., CARLA S. (NELSON) RICKARD v. DOUGLAS TAYLOR HOLT

**Direct Appeal from the Circuit Court for Sumner County**
**No. 28874-C      C.L. Rogers, Judge**

_____

**No. M2009-01331-COA-R3-CV - Filed March 30, 2010**

_____

This is an appeal from the trial court's finding that good cause existed to exempt Father/Appellee from a wage assignment to collect child support as required by Tenn. Code. Ann. 36-5-501(a).  Discerning no error, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, J.,delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S. and DAVID R. FARMER, J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; and Michael E. Moore, Solicitor General; Warren A. Jasper, Senior Counsel, Nashville, Tennessee, for the appellant, State of Tennessee ex rel., Carla S. (Nelson) Rickard.

Richard A. Tompkins, Child Support Divison of Sumner County, Office of the District Attorney General, Gallatin, Tennessee, for the appellant, State of Tennessee ex rel., Carla S. (Nelson) Rickard.

Joseph Y. Longmire, Jr., Hendersonville, Tennessee, for the appellee, Douglas Taylor Holt.

### OPINION

Mother, Carla S. Rickard ("Ms. Rickard"), and Appellee, Father, Douglas Taylor Holt ("Mr. Holt") were divorced on September 18, 2001, by Order entered in the Wilson County Circuit Court.  The case was subsequently transferred to Sumner County.  Ms. Rickard filed a petition to modify the parties' parenting plan on August 6, 2008.  She sought to modify both the parenting schedule and child support.  On February 5, 2009, Appellant, the State of Tennessee Department of Human Services ("DHS") intervened in the case for the purpose

of providing child support services. On February 3, 2009, an administrative order was entered by DHS requiring Mr. Holt to pay all future child support payments directly to the Central Child Support Receipting Unit. Mr. Holt, on February 25, 2009, filed a motion to set aside the administrative order.

A hearing on the petition to modify and the motion to set aside was held on March 12, 2009. According to the Statement of Evidence filed by DHS, both Ms. Rickard and Mr. Holt were present at this hearing, and both testified. Mr. Holt testified that he was a pilot for a commercial airline and further testified that he had recently been promoted to captain. In the training for the promotion, Mr. Holt had been given the impression that his employer would take "a dim view" of someone in his position of authority and responsibility being subject to a wage assignment. Mr. Holt testified that he believed that it would not be good for his job if he were subject to a wage assignment for child support. He further testified that he had not been late in paying his child support. Ms. Rickard testified that Mr. Holt paid his monthly child support, but that he had been inconsistent in the manner in which he paid the support prior to the involvement of DHS. She testified that sometimes Mr. Holt would pay her directly, sometimes he would put the check in one of the children's backpack, and other times he would deposit the money in her bank account.

The trial court entered an order on March 23, 2009, modifying the parenting plan and ordering Mr. Holt to pay his child support directly to Ms. Rickard. In this order, the trial court stated that it was taking the motion to set aside the administrative order under advisement. On March 30, 2009, DHS filed a memorandum in opposition to the motion to set aside. The trial court, on April 21, 2009, entered an order setting aside the wage assignment. The trial court found that, since 2001, Mr. Holt had made timely child support payments. Further, the trial court found that Mr. Holt maintained regular professional employment and that the "uncontradicted testimony was [that] the employer views garnishments and wage assignment as possible pilot fitness issues." The trial court found that it was in the best interests of the children,[1] Ms. Rickard and Mr. Holt not to cause any employment problems for Mr. Holt. The trial court, citing Tenn. Code Ann. §36-5-501, held that "due to the timely payments, and the foregoing good cause, [Mr. Holt's] payments may continue to be directly to the Mother." The trial court noted that it would be illegal for the employer to take adverse action against Mr. Holt based on the wage assignment, but held that good cause was served by not providing the employer with any reason to question Mr. Holt's fitness. The trial court stated that smooth regular child support payments were better than the risk of adverse employment action resulting in protracted litigation, which might interrupt child support payments.

---

[1]The trial court's order uses the term "child." However, there are two children involved in this case.

DHS filed a motion to alter or amend the judgment pursuant to Tenn. R. Civ. P. 59.06 on May 5, 2009. DHS attached to its motion a letter from Mr. Holt's employer, dated April 27, 2009, which letter was obtained with an administrative subpoena. The letter stated that the employer complied with all federal and state laws in regard to garnishments. A hearing was held on DHS's motion on June 5, 2009. Following argument from counsel, the trial court denied the motion to alter or amend, declining to order a wage assignment. However, the trial court did modify its order to require Mr. Holt to make payments directly to the Central Child Support Receipting Office, as required by statute. An order was entered reflecting this decision on June 15, 2009. In this order, the trial court specifically noted that there was no newly discovered evidence, that DHS failed to timely present the letter from the employer and, therefore, the trial court did not consider the letter.

DHS timely filed a notice of appeal on June 22, 2009 and raises the following issue for our review: whether the trial court erred by ordering child support to be paid in a manner other than wage assignment.

We review questions of law *de novo*, with no presumption of correctness. ***Barge v. Sadler***, 70 S.W.3d 683, 686 (Tenn. 2002). However, we review the trial court's findings of fact, *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We will reverse a trial court's decision on a motion to alter or amend only upon a finding of an abuse of discretion. ***Stovall v. Clarke***, 113 S.W.3d 715, 722 (Tenn. 2003).

Tennessee Code Annotated § 36-5-501(a)(1) provides, in pertinent part:

> For any order of child support issued, modified, or enforced on or after July 1, 1994, the court shall order an immediate assignment of the obligor's income, including, but not necessarily limited to: wages, salaries, commissions, bonuses, workers' compensation, disability, payments pursuant to a pension or retirement program, profit sharing, interest, annuities, and other income due or to become due to the obligor. The order of assignment shall issue regardless of whether support payments are in arrears on the effective date of the order.

The statute, however, provides two exceptions to the general rule requiring income assignment:

> **(2)** Income assignment under this subsection (a) shall not be required:

**(A)** If, in cases involving the modification of support orders, upon proof by one party, there is a written finding of fact in the order of the court that there is good cause not to require immediate income assignment and the proof shows that the obligor has made timely payment of previously ordered support. "Good cause" shall only be established upon proof that the immediate income assignment would not be in the best interests of the child. The court shall, in its order, state specifically why such assignment will not be in the child's best interests; or

**(B)** If there is a written agreement by both parties that provides for alternative arrangements. Such agreement must be reviewed by the court and entered in the record.

Tenn. Code. Ann. § 36-5-501(a)(2)(2001). This Court has had numerous opportunities before to review this statute and the exceptions included within it. *See, e.g., **Butler v. State***, No. W2001-01137-COA-R3-CV, 2002 WL 31845233 (Tenn. Ct. App. December 18, 2002); ***Baker v. State***, No. 01A1-9509-CV-00428, 1997 WL 749452 (Tenn. Ct. App. Dec. 5, 1997); and ***Terrell v. Terrell***, No. 02A01-9610-CV-00254, 1997 WL 576536 (Tenn. Ct. App. Sept. 18, 1997). At issue in the case before us, is the first exception, i.e., the "good cause" exception.

The good cause exception allows the trial court to exempt a parent from the wage assignment requirement when it is in the best interest of the child, provided certain other requirements are met. Tenn. Code. Ann. § 36-5-501(a)(2)(A)(2001); *see also **Butler,*** 2002 WL 3184523, at * 7. To apply this exception, the trial court must find that there is good cause not to require wage assignment and that the obligor has made timely payments of child support in the past. Tenn. Code Ann. § 36-5-501(a)(2)(A)(2001); *see also **Butler,*** 2002 WL 3184523, at * 7. To find good cause, the proof must show that the income assignment would not be in the best interest of the child at issue. Tenn. Code Ann. § 36-5-501(a)(2)(A)(2001); *see also **Butler,*** 2002 WL 3184523, at * 7. Upon making this decision, the trial court must make written findings of fact, and also explain why an income assignment would not be in the child's best interest. Tenn. Code Ann. § 36-5-501(a)(2)(A)(2001); *see also **Butler,*** 2002 WL 3184523, at * 7. This requires more than "a mere conclusory finding that wage assignment is not in the best interests of the children." ***Butler,*** 2002 WL 3184523, at * 7.

This Court reviewed the application of the good cause exception in ***Butler v. State***, No. W2001-01137-COA-R3-CV, 2002 WL 31845233 (Tenn. Ct. App. December 18, 2002). In ***Butler***, this Court found that the statutory requirements had not been met and, therefore,

a wage assignment was mandated. ***Butler,*** 2002 WL 3184523, at \* 7. Specifically, this Court found that the record in ***Butler*** did not contain proof supporting a finding of good cause not to require a wage assignment, and that the trial court's order did not state, as required, why a wage assignment was not in the child's best interest. ***Id.***

This Court also had an opportunity to discuss the good cause exception in ***Terrell v. Terrell***, No. 02A01-9610-CV-00254, 1997 WL 576536 (Tenn. Ct. App. Sept. 18, 1997). In ***Terrell***, we affirmed the trial court's order that the father pay child support through an income assignment. ***Id.*** at \*6. In that case, we noted that Tenn. Code Ann. § 36-5-501(a) "presumptively require[s] that all child support orders issued after July 1, 1994, be paid by income assignment." ***Id.*** at \*7. This court recognized that a trial court may waive this requirement, in accordance with the statute, upon a finding of good cause, or by agreement of the parties. ***Id.*** The father argued that the good cause exception applied as he had never been late in paying his child support and that the income assignment was not in the best interest of the child because the court clerk charged a five percent fee for processing the payment, thus taking money from the family. ***Id.*** This Court rejected his argument, explaining that the statute itself contemplates the clerk's office charging a fee. ***Id.***

DHS argues that, based on ***Butler v. State***, No. W2001-01137-COA-R3-CV, 2002 WL 31845233 (Tenn. Ct. App. December 18, 2002), ***Baker v. State***, No. 01A1-9509-CV-00428, 1997 WL 749452 (Tenn. Ct. App. Dec. 5, 1997), and ***Terrell v. Terrell***, No. 02A01-9610-CV-00254, 1997 WL 576536 (Tenn. Ct. App. Sept. 18, 1997), we should reverse the trial court and find that a wage assignment is mandatory. Clearly, a wage assignment is mandatory in all cases where one of the two exceptions provided in the statute are not met. Tenn. Code. Ann. § 36-5-501(a). However, the cases cited by the DHS are not helpful to this Court. In ***Butler***, this Court found that a wage assignment was required because there was no proof in the record of good cause. ***Butler,*** 2002 WL 3184523, at \* 7. In ***Terrell***, this Court found that good cause did not exist to exempt the father as his only assertion of good cause was based on the processing fee authorized by the statute itself. ***Terrell***, 1997 WL 576536 , at \*7. Unlike those cases, the record before us contains uncontradicted proof, upon which the trial court determined that it is in the children's best interest to except Mr. Holt from a wage assignment. Further, in ***Baker***, this Court did not address the good cause exception, but held that the statute required mother to make payments directly to either the clerk of the trial court or to DHS. ***Baker,*** 1997 WL 749452, at \*4. In this case, the trial court recognized this requirement, and subsequently amended its order to require Mr. Holt to make payments directly to the Central Child Support Receipting Office.

DHS also cites to ***Almodovar v. Gonzalez***, 573 So. 2d 380 (Fla. Dist. Ct. App. 1991) to support its contention that we should find that the good cause exception does not apply in this case. In ***Almodovar,*** the court reversed a trial court's finding of good cause, which was

based on an attorney's assertion that his client would exercise good faith in making future payments and that some employers may not look favorably on a wage assignment. *Id.* at 381. The client had been found to be in arrears twice before. *Id.* In reversing the trial court, the *Almodovar* court stated that it was an abuse of discretion for the trial court to not require a wage assignment solely based on counsel's assurances of good faith, when there had been noncompliance in the past. *Id.* at 382. The *Almodovar* court did not address the effect a finding of possible adverse employment action could have on a finding of good cause. The court merely noted that an employer who took retaliatory action would be subject to civil penalties and that the trial court could issue a show cause order to the employer. *Id.* Accordingly, we find that *Almodovar* is not helpful to our decision on good cause.

After reviewing the record, we find that the evidence does not preponderate against the trial court's factual findings, nor does the evidence preponderate against the trial court's determination that good cause existed to exempt Mr. Holt from the wage assignment requirement. *See Dalton v. Dalton*, CA No. 28, 1991 Tenn App LEXIS 146 (Tenn. Ct. App. March 1, 1991). We note that courts should be cautious in making a determination that good cause exists. *See, e.g.*, *Beals v. Beals*, 517 N.W.2d 413, 417 (N.D. 1994); *State ex rel. Stutler v. Watt*, 424 S.E.2d 771, 775 (W. Va. 1992). Moreover, the trial court should maintain focus on the best interests of the children involved. The trial court should not find good cause merely due to inconvenience to the obligor or the employer, nor due to any embarrassment which the obligor may endure due to a wage assignment. *See, e.g., State ex rel. Stutler v. Watt*, 424 S.E.2d 771, 775 (W. Va. 1992).

In this case, the trial court fully complied with all the statutory requirements for finding good cause and exempting Mr. Holt. The trial court made factual findings that good cause exists to exempt Mr. Holt from the wage assignment requirement, and that Mr. Holt has timely made previously ordered child support payments. In accordance with the statute, the trial court reduced these findings to writing. The trial court also stated that the proof did not show that a wage assignment was in the best interest of the child. Moreover, the trial court fully explained the reasoning behind its best interest determination.

From our review of the record, the evidence does not preponderate against the trial court's factual findings. Mr. Holt testified that he consistently made his child support payments on time. Ms. Rickard's testimony did not contradict this assertion. Ms. Rickard merely testified that Mr. Holt had been inconsistent in the method of his payment, an issue which should now be resolved by requiring him to make payments directly to the Central Child Support Receipting Office.

Also, we find that the evidence does not preponderate against the trial court's finding that Mr. Holt's employer took a "dim view" of wage assignments, posing some risk of

adverse employment action. At trial, DHS did not attempt to introduce any proof to the contrary. In its motion to alter or amend, DHS sought to introduce new evidence in the form of a letter from Mr. Holt's employer stating that it complied with all state and federal laws regarding wage assignments. The trial court declined to consider the newly submitted evidence.

> When additional evidence is presented in support of a [a motion to alter or amend pursuant to Tenn. R. Civ. P. 59.04], the trial court should consider the factors applicable to a motion . . . pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure: the moving party's effort to obtain the evidence. . .; the importance of the new evidence to the moving party's case; the moving party's explanation for failing to offer the evidence in responding...; the unfair prejudice to the nonmoving party; and any other relevant consideration.

***Stovall v. Clarke***, 113 S.W.3d 715, 721 (Tenn. 2003)(citing ***Harris v. Chern***, 33 S.W.3d 741, 744 (Tenn. 2000)). We review the trial court's decision on a motion to alter or amend under an abuse of discretion standard. ***Id.*** After reviewing the record, we cannot say that the trial court abused its discretion in declining to consider the newly submitted evidence. When asked at the hearing why it did not have the proof at issue at the original hearing, counsel for DHS responded: "To be honest, Your Honor, no one thought that Mr. Holt opining about something that might happen, that hasn't happened, would actually have any weight." In other words, as the trial court said, "Counsel's choice...." No other argument was made, nor other proof presented on the issue of the newly submitted evidence. Accordingly, we do not find that the trial court erred in refusing to consider the letter from Mr. Holt's employer. Therefore, we do not consider the letter on appeal. In light of this finding, the only proof presented at trial was that Mr. Holt's employer took a "dim view" of a wage assignment and that a wage assignment may adversely affect his employment. Consequently, we find that the evidence does not preponderate against the trial court's finding that a wage assignment poses a risk to father's employment. Had counsel for DHS taken advantage of its opportunity at trial to present proof to contradict Mr. Holt's testimony, the outcome may have been different. However, counsel chose not to do so, and this Court cannot review the trial court's findings based on evidence not introduced at trial and not properly in the record.

Further, after reviewing the record, we find that the evidence does not preponderate against the trial court's finding that it is in the best interest of the children not to require a wage assignment. The uncontradicted proof at trial showed that Mr. Holt had not been late or missed any previously ordered child support payments. Also, the uncontradicted proof at

trial showed that a wage assignment could adversely affect Mr. Holt's employment. The trial court recognized that it would be illegal for Mr. Holt's employer to take disciplinary action or to discharge him because of the wage assignment. However, the trial court noted that "no risk was better than the risk of some adverse employment action and protracted litigation," which could possibly cause missed child support payments. The trial court further reasoned that the best interest of the children were served by the regular payment of child support, the "sizeable amount" of child support based on Mr. Holt's current high salary, and the possibility of an increase in child support with the opportunities for promotion that Mr. Holt had with his employer. Based upon the fact that the appellate record is devoid of evidence contradicting Mr. Holt's assertion that a wage assignment could adversely affect his employment, we cannot find that the trial court erred in finding that it was in the children's best interest not to require a wage assignment.

We affirm the trial court's finding of good cause to exempt Mr. Holt from the statutory requirement of a wage assignment. Further, upon finding that the trial court did not err in finding good cause to exempt Mr. Holt from the wage assignment requirement, we also find that the trial court did not abuse its discretion in denying DHS' motion to alter or amend. Costs of this appeal are taxed to the Appellant, State of Tennessee, *ex rel*. Carla S. Holt (Nelson) Rickard.
.

_____

J. STEVEN STAFFORD, JUDGE